IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                          )
                                )   Chapter 7
MARK ALLEN SIMONS, JR.,         )
                                )   Bankruptcy No. 09-01428
        Debtor.                 )

### ORDER RE: RETURN OF EXCESS COMPENSATION

This matter came before the undersigned on July 21, 2009, for hearing on motion for order directing examination of compensation paid to bankruptcy petition preparer.  Assistant U.S. Trustee Janet Reasoner appeared on behalf of the U.S. Trustee.  Harvey Berman, the petition preparer, appeared on his own behalf.  Debtor Mark Allen Simons, Jr., was also present. After hearing arguments, the Court took the matter under advisement and allowed the parties to submit written briefs.  The time for filing briefs has now passed and this matter is ready for resolution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF THE CASE

Trustee has requested the Court examine the fees paid to Mr. Berman for preparation of Debtor's bankruptcy petition and the appropriateness of Mr.  Berman's services to Debtor.

### FINDINGS OF FACT

Mark Allen Simons, Jr. ("Debtor") filed his pro se chapter 7 petition and Schedules D, E, and F on May 22, 2009 (Doc. 1), together with an application to pay his filing fee in installments (Doc. 3).  Debtor's filing was incomplete.  On the initial date of filing, the Court entered a Notice and Order re: Incomplete Filing informing Debtor he had fifteen days to complete his filing (Doc. 4).  On June 9, Debtor moved to extend the deadline to file his remaining schedules (Doc. 10).  The Court found no cause to extend the time to file Debtor's remaining schedules.  Debtor was given until June 24 to complete his filing or the case would be dismissed (Doc. 12). Debtor filed his remaining schedules and statements on June 23, 2009 (Doc. 14).  The petition filed by Debtor does not disclose the involvement of a bankruptcy petition preparer ("BPP").  However, Debtor's statement of financial affairs reflects a payment of $750 to Harvey Berman on May 10, 2009 (Doc. 14, item 9).  Mr.

Berman's "Disclosure of Compensation of Bankruptcy Petition Preparer," filed June 23, 2009, also shows this amount.

At the hearing, Mr. Berman stated he did not identify himself as a bankruptcy petition preparer at the outset because he was unaware of the statutory requirement to do so.  He became aware of the statutory requirement while researching Debtor's case at the University of Iowa Law Library on June 16 or 19.  When he realized he was in violation of 11 U.S.C. § 110, he self-reported to the U.S. Trustee.  On June 23, Mr. Berman met with Assistant U.S. Trustee Janet Reasoner and John Schmillen, an attorney in the U.S. Trustee's office.  At that meeting, the U.S. Trustee's office concluded it would recommend approval of a fee of $250 for Mr. Berman's work on Debtor's behalf.  Following this meeting, Mr. Berman withdrew from the agreement with the U.S. Trustee, concluding that he was entitled to more compensation.

Debtor initially contacted Mr. Berman in response to an ad in a local newspaper advertising assistance with bankruptcy cases.  Mr. Berman agreed to help Debtor with his bankruptcy filing for a fee of $750.  From the actions taken by Mr. Berman, it appears that Mr. Berman has understood himself to be Debtor's lawyer.  Mr. Berman assisted Debtor in filling out the forms of the bankruptcy petition.  He also provided Debtor with forms from continuing legal education events and requested that Debtor complete them.  Additionally, Mr. Berman made a number of phone calls on Debtor's behalf between the date of the first meeting and the date that the petition was filed, locating creditors, collecting data, inquiring into Debtor's insolvency, and contacting the Bankruptcy Court clerk's office.  Mr. Berman testified at the July 21 hearing that he views himself as Debtor's protector.  In the course of doing legal research for Debtor's case, he found § 110 and discovered that he had an "inherent conflict of interest."  Nonetheless, Mr. Berman continued to have contact with Debtor following the discovery of this statute.

On June 24, 2009, the Court dismissed Debtor's case for Debtor's failure to comply with the deadline for filing his Credit Counseling Certificate (Doc. 16).  Debtor filed his Credit Counseling Certificate on July 1.  The Certificate indicates that Debtor received the required credit counseling on June 12.  After Debtor completed his credit counseling, he received the Certificate and delivered it to Mr. Berman.  Mr. Berman, believing it was the credit counselor's duty to deliver the Certificate to the Court, did not timely file the document.  According to his statements at the hearing, Mr. Berman was

unfamiliar with the credit counseling requirement and believed that filing the certificate was a mere "ministerial act."

The U.S. Trustee seeks to have the Court determine what portion of the fee Debtor paid to Mr. Berman is in excess of the value of services rendered, pursuant to § 110(h)(3)(A)(i).  As Debtor filed an Amended Schedule C, claiming the $750 paid to Mr. Berman is exempt, and as the bankruptcy trustee did not file an objection, any funds that Mr. Berman received that were in excess of the value of services rendered shall be returned to Debtor.

## CONCLUSIONS OF LAW

A "bankruptcy petition preparer" ("BPP") is defined in § 110 as "a person, other than an attorney for the Debtor . . . , who prepares for compensation a document for filing."  A BPP is required to sign any document he or she prepares for filing and print his or her name and address.  11 U.S.C. § 110(b)(1).  Additionally, the BPP is required to file "a declaration under penalty of perjury . . . together with the petition, disclosing any fee received from or on behalf of the Debtor within 12 months immediately prior to the filing of the case."  11 U.S.C. § 110(h)(2).  "The court shall disallow and order the immediate turnover to the bankruptcy trustee any fee . . . found to be in excess of the value of any services (i) rendered by the bankruptcy petition preparer during the 12-month period immediately preceding the date of the filing of the petition."  11 U.S.C. § 110(h)(3)(A)(i).  Under § 110(k), "[n]othing in [§ 110] shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law."

Congress enacted § 110 to regulate the actions of bankruptcy petition preparers by implementing standards across the field.  In re Boyce, 317 B.R. 165, 170 (Bankr. D. Utah 2004) (citing In re Farness, 244 B.R. 464 (Bankr. D. Idaho 2000)).  With § 110, "Congress sought to confront petition preparers 'who prey on the poor and unsophisticated', who 'attempt to provide legal advice and legal services' and/or who 'take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.'" In re Bradshaw, 233 B.R. 315, 325-26 (Bankr. D. N.J. 1999) (quoting 140 Cong. Rec. S14597-02 (daily ed. Oct. 7. 1994)).  Congress meant to allow petition preparers to provide the limited service of typing bankruptcy petitions and to restrict them from providing debtors with anything beyond this limited service.  See Farness, 244 B.R. at 466-67 (citing H.R. Rep. No. 103-384, at 40-41 (1994)).

3

When analyzing whether a petition preparer's actions constitute the unauthorized practice of law, a bankruptcy court looks to state law.  <u>In re Delgado</u>, 2005 WL 758809, at *6 (Bankr. N.D. Iowa 2005) ("Bankruptcy courts typically look to state law for guidance on whether a bankruptcy petition preparer has violated § 110 by engaging in the unauthorized practice of law.") (citing cases).  In Iowa, <u>Iowa Supreme Court Comm'n on Unauthorized Practice of Law v. Sturgeon</u>, 635 N.W.2d 679 (Iowa 2001), provides substantial guidance on this issue.

The <u>Sturgeon</u> court quoted extensively from Ethical Consideration 3-5: "It is neither necessary nor desirable to attempt the formulation of a single, specific definition of what constitutes the practice of law.  However, the practice of law includes, but is not limited to, representing another before the courts; giving of legal advice and counsel to others relating to their rights and obligations under the law; and preparation or approval of the use of legal instruments by which legal rights of others are either obtained, secured or transferred . . . " <u>Sturgeon</u>, 635 N.W.2d at 681-82.  <u>Sturgeon</u> held that a bankruptcy petition preparer, a former lawyer, who gave advice to debtors and assisted debtors "in the selection, preparation, and filing of the bankruptcy forms" had exceeded the work allowed under § 110 and had engaged in the unauthorized practice of law.  <u>Id</u>. at 684.  The court focused, in particular, on one incident where Sturgeon "drew upon his experience as a lawyer in drafting" a pleading on a debtor's behalf.  <u>Id</u>. at 684.

### PETITION PREPARER COMPENSATION

The Court now turns to the issue of what amount of compensation is appropriate for Mr. Berman.  Mr. Berman initially charged Debtor a fee of $750 for preparing the bankruptcy petition and schedules.  After Mr. Berman discovered § 110, he met with the U.S. Trustee and agreed to accept $250 for services rendered to Debtor.  Soon after this meeting, however, Mr. Berman withdrew from that agreement.  Mr. Berman argues that a higher fee is appropriate because of the experience and legal training he brought to his work for Debtor.

The Court will disallow any compensation that exceeds the value of services rendered by a BPP to a debtor.  <u>See</u> § 110(h)(3)(A).  Further, the Court has the authority to recover funds paid by a Debtor to a person engaged in the unauthorized practice of law.  <u>See</u> § 110(k).

"There is no single standard as to what constitutes a proper fee for the service of preparing a bankruptcy petition."

4

Delgado, 2005 WL 758809, at *8.  Various courts analyzing the
issue have determined that a fee ranging from $50 to nearly $200
is appropriate, depending on the circumstances.  See In re
Carrier, 363 B.R. 247 (M.D. Fla. 2006) (finding that the $300 fee
charged by BPP was unreasonable and that $112.50 would be a
reasonable amount); In re Rojero, 399 B.R. 913 (D. N.M. 2008)
(finding that only $170 of the $642 charged by BPP would be
retained by her, and ordering that the disallowed portion be
returned to the debtor); In re Wagner, 241 B.R. 112, 122 (Bankr.
E.D. Pa. 1999) (determining that the services provided by a BPP
were valued at "not more than $50," despite the BPP charging a
fee of $250).

This Court held previously that "a bankruptcy petition
preparer who engages in the unauthorized practice of law is not
entitled to retain *any* fees for services."  Delgado, 2005 WL
758809, at *10 (quoting In re Wagner, 241 B.R. 112, 121 (Bankr.
E.D. Pa. 1999) (emphasis in original)).  Indeed, the vast
majority of courts agree that bankruptcy petition preparers may
be compensated only for their typing services.  See e.g., In re
Carrier, 363 B.R. 247, 252 (Bankr. M.D. Fla. 2006) ("A petition
preparer's services may only include typing the petition,
schedules, and other forms based upon the information supplied by
the Debtor.  Any services going beyond these acts constitute the
unauthorized practice of law and are not compensable."); In re
Woodward, 314 B.R. 201, 205 (Bankr. N.D. Iowa 2004) ("Petition
preparers can perform only the modest service of transcribing or
typing bankruptcy forms that the Debtors alone must prepare
without assistance.") (citing In re Bush, 275 B.R. 69, 84 (Bankr.
D. Idaho 2002).  But see In re Boyce, 317 B.R. 165, 171 (Bankr.
D. Utah 2004) (determining that "bankruptcy petition preparation
is not analogous to ordinary typing" and that, "[g]iven the
heightened risks and responsibilities, one hundred and ninety-
five dollars is a reasonable fee for the accurate and well
organized preparation of a bankruptcy petition.").

**ANALYSIS**

Mr. Berman qualifies as a bankruptcy petition preparer under
§ 110.  The bulk of Mr. Berman's actions on Debtor's behalf
substantially exceed the role of petition preparer and are
tantamount to the practice of law.  Though Mr. Berman claimed at
the hearing that he has not practiced law since he gave up his
license to practice in California in 1993, his own description of
the activities he completed on Debtor's behalf betrays that
statement.  Mr. Berman collected information and made inquiries
on Debtor's behalf.   He provided Debtor with forms to complete,
independent of the required forms for a bankruptcy filing.

5

Additionally, Mr. Berman drafted and filed a motion on Debtor's behalf and made several decisions regarding Debtor's case that employed his understanding of legal analysis and strategy, including his decisions: (1) to commence Debtor's case in the wrong district, (2) to refrain from filing Debtor's Credit Counseling Certificate, and (3) to continue "representing" Debtor even after he became aware of the restrictions imposed by § 110.

Before determining an appropriate amount of compensation, it is necessary to determine what services performed by Mr. Berman warrant compensation.  Mr. Berman is not entitled to fees for any services he provided Debtor that went beyond the services that § 110 allows.  Based on the time sheet provided to the Court, Mr. Berman expended substantial amounts of time on activities not specifically necessary for typing Debtor's bankruptcy petition, including a review of bankruptcy material, telephoning creditors, research at the University of Iowa Law Library, and numerous miscellaneous phone calls with Debtor.  Not only were the bulk of Mr. Berman's activities not necessary for typing Debtor's petition, but they were not allowed under § 110.  Of the 48.5 hours recorded, only 34.6 of which occurred prior to Mr. Berman discovering the restriction of § 110, Mr. Berman expended 11.65 hours typing Debtor's bankruptcy petition and schedules.[1]

Turning to the issue of compensation, it is appropriate to deny Mr. Berman any compensation for his typing services for Debtor.  Mr. Berman advertised his ability to assist Debtors with bankruptcy petitions without any knowledge of changes in the law in the sixteen years since he was licensed to practice.  In this District, attorneys typically charge around $1500 for a routine chapter 7 bankruptcy.  Mr.  Berman's rate of $750 is half of what an attorney in the field might charge, while the Bankruptcy Code only allows him provide typing services.  He charged Debtor a substantial amount of money at the outset and proceeded to perform myriad irrelevant or inappropriate tasks.  Mr. Berman

---

[1]This amount includes: 1.8 hours on 5/9/09 (partial matrix); 3.2 hours on 5/12/09 (DEF schedules); .6 hours on 5/16/09 (completion of matrix); .3 hours on 5/20/09 (fee installment); .15 hours on 6/1/09 (typing portion, social security statement); 2.15 hours on 6/10/09 (typing portion, remaining schedules); 2.9 hours on 6/14/09 (typing portion, remaining schedules, notices, etc.); and .55 hours on 6/17/09 (typing portion, means calculation).  With regard to any instances on Mr. Berman's time sheet where typing was mixed with a non-typing activity, the Court divided the listed time in half and allotted that portion to the hours spent typing.

seems to be precisely the sort of petition preparer Congress
feared when it enacted § 110 to protect "the poor and
unsophisticated . . . who are ignorant of their rights both
inside and outside the bankruptcy system." <u>Bradshaw</u>, 233 B.R. at
326 (quoting 140 Cong. Rec. S14597-02). Any benefit that
inured to Debtor on account of Mr. Berman's 11.65 hours of typing
services have been offset by the numerous harms Mr. Berman
brought to Debtor's case. By denying him any compensation, the
Court intends to discourage Mr. Berman from any future attempts
to "assist" debtors in bankruptcy petition preparation.

## CONSTITUTIONAL ISSUES

The Court will now briefly address the multiple
Constitutional issues Mr. Berman has raised in his briefs. The
party challenging the statute has the burden of proving that it
is unconstitutional. <u>See</u> <u>Middleton v. Texas Power & Light Co.</u>,
249 U.S. 152, 158 (1919). Mr. Berman alleges that § 110 violates
the Equal Protection Clause by unjustly regulating the conduct of
bankruptcy petition preparers. Congress has the authority to
pass uniform laws governing bankruptcy petition preparers. <u>See</u>
<u>In re Doser</u>, 412 F.3d 1056 (9th Cir. 2005). "[P]assing uniform
laws for the protection of debtors during the process of
preparing the bankruptcy petition is eminently 'necessary and
proper' to effectuate Congress's power under the Bankruptcy
Clause." <u>Id</u>. at 1062. Congress regulated the behavior of
bankruptcy petition preparers specifically to safeguard against
persons who "often lack the necessary legal training and ethics
regulation to provide [bankruptcy petition preparation] services
in an adequate and appropriate manner." <u>Farness</u>, 244 B.R. at 467
(citing H.R. Rep. No. 103-384, at 40-41 (1994)). Against the
weight of authority supporting constitutionality, Mr. Berman
fails to present any specifics or authority to substantiate his
claim that § 110 violates his rights under the Equal Protection
Clause. Mr. Berman's conduct presents the precise actions
against which the regulation of bankruptcy petition preparers is
designed to protect. With outdated legal training and without
professional regulation, Mr. Berman "assisted" Debtor by
commencing his case in the wrong district, failing to file
relevant forms and having the case dismissed, while billing him a
substantial amount for services he was not licensed to perform.
Accordingly, the Court finds that Mr. Berman's argument is
without merit.

Mr. Berman alleges that his right to the assistance of
counsel and his right to cross-examine witnesses against him were
violated in the July 21 hearing before the Court. The rights to
effective assistance of counsel and to confront witnesses arise

7

from the Sixth Amendment.  U.S. Const. amend. VI.  These rights
are traditionally implicated when an individual is being
prosecuted in a criminal matter.  The Sixth Amendment has not
been extended to bankruptcy court proceedings where no
fundamental liberty interest is at stake.  Therefore, the Sixth
Amendment arguments raised by Mr. Berman are irrelevant.  Mr.
Berman failed to present any specifics or authority to support
these arguments.  Accordingly, the Court finds that Mr. Berman's
arguments regarding violation of his Sixth Amendment rights are
without merit.

     Mr. Berman alleges that his privilege against self-
incrimination was violated in the July 21 hearing before the
Court, and he claims that the Court's actions were in violation
of procedural and substantive due process and fundamental
fairness.  No purpose would be served by a lengthy analysis of
these matters.  The Court has examined these Constitutional
challenges and finds them to be unsupported and without merit.

### CONCLUSION

     Mr. Berman's actions substantially exceed those allowed for
bankruptcy petition preparers under § 110.  None of the arguments
for retaining the full amount of compensation received raised by
Mr. Berman have merit.  The Court concludes that the entire
amount paid to Mr.  Berman should be returned to Debtor Mark
Allen Simons, Jr.

     **WHEREFORE,** motion for order directing examination of
compensation paid to bankruptcy petition preparer is GRANTED.

     **FURTHER,** judgment is entered against Mr.  Berman and in
favor of Debtor Mark Allen Simons, Jr., in the amount of $750.

     Dated and Entered:
     September 21, 2009

     _____
     Paul J. Kilburg
     Chief Bankruptcy Judge

8